IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBBIE LAVERNE D'ARMOND,

        Plaintiff,

vs.                            Case No. 14-4086-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

## MEMORANDUM AND ORDER

In June 2011, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of May 29, 2011. On January 24, 2013, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on April 1, 2013 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits. Plaintiff argues that the ALJ did not properly weigh the evidence and did not properly assess plaintiff's credibility. As explained below, the court shall remand this case for further proceedings because the ALJ did not properly consider consulting

1

physicians' opinions which were rendered without examining significant parts of the record. The court will not review the ALJ's credibility analysis.

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." Id., quoting Richardson
v. Perales, 402 U.S. 389, 401 (1971).   The court must examine
the record as a whole, including whatever in the record fairly
detracts from the weight of the defendant's decision, and on
that basis decide if substantial evidence supports the
defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th
Cir. 1994) (quoting Casias v. Secretary of Health & Human
Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).   The court may
not reverse the defendant's choice between two reasonable but
conflicting views, even if the court would have made a different
choice if the matter were referred to the court de novo. Lax v.
Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski
v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 14-26).

There is a five-step evaluation process followed in these
cases which is described in the ALJ's decision.  (Tr. 15-16).
First, it is determined whether the claimant is engaging in
substantial gainful activity.  Second, the ALJ decides whether
the claimant has a medically determinable impairment that is
"severe" or a combination of impairments which are "severe."  At
step three, the ALJ decides whether the claimant's impairments
or combination of impairments meet or medically equal the
criteria of an impairment listed in 20 C.F.R. Part 404, Subpart
P, Appendix 1.  Next, the ALJ determines the claimant's residual

functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in her decision.  First, plaintiff meets the insured status requirements for Social Security benefits through June 30, 2016.  Second, plaintiff has not engaged in substantial gainful activity since May 29, 2011, the alleged onset date of disability.  Third, plaintiff has the following severe impairments:  chronic bronchitis; degenerative disc disease of the lumbar spine; affective disorder; anxiety; and right knee degenerative joint disease with meniscus tear.  Fourth,

plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that plaintiff can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The ALJ further found that plaintiff is capable of sitting for up to 6 hours and standing and walking for six hours in an 8-hour workday. The ALJ also concluded: that plaintiff can never climb ladders, ropes, or scaffolds; that she can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; and that she should avoid concentrated exposure to extreme cold, excessive vibration and pulmonary irritants such as fumes, dusts, odors, gases, and poorly ventilated areas. The ALJ decided that plaintiff could not drive. She also decided that plaintiff can perform simple, routine, and repetitive tasks that require only occasional public contact. Finally, the ALJ determined that, although plaintiff cannot perform any past jobs she once was capable of doing, she could perform such jobs as electrical assembler, mail clerk and merchandise marker. The ALJ further found that these jobs exist in significant numbers in the national and state economy.

III. THE ALJ DID NOT PROPERLY CONSIDER CONSULTING PHYSICIANS'
OPINIONS IN HER DECISION.

Plaintiff contends that the ALJ failed to properly weigh
the medical opinion evidence from Dr. Karen Evans and Kim King,
a physical therapist, and from Marie Ilardi, an APRN, and Dr.
David Goering.  These persons treated plaintiff and the ALJ gave
no weight to their opinions.  Among other points, plaintiff
criticizes the ALJ for giving great weight to the opinions of
consulting physicians who did not review a complete record,
including the records of Evans, Ilardi and Goering.  As
discussed below, the court disagrees with some of the arguments
plaintiff makes regarding the ALJ's analysis of the treating
sources' opinions.  But, the court agrees that the ALJ erred in
her consideration of the consulting physicians' opinions because
regulations require that an ALJ consider a source's familiarity
with the case record and the degree to which opinions consider
all of the pertinent evidence in the record, "including opinions
of treating and other examining sources."  20 C.F.R. §§
404.1527(c)(3) & (6); 416.927(c)(3) & (6).  The record does not
show that the ALJ engaged in this analysis.

A.  Dr. Evans and Kim King

Dr. Evans treated plaintiff for back pain from November
2011 through March 2012.  On May 16, 2012, Dr. Evans, along with
Kim King, completed a questionnaire.  (Tr. 650-57).  Kim King

6

gave plaintiff a physical therapy evaluation on May 2, 2012. Their answers on the questionnaire stated that plaintiff suffers from lumbar radiculopathy, thoracic pain, chronic lumbar pain, herniated lumbar disc, anxiety, depression and some other medical problems.  They recorded that plaintiff exhibited pain with active flexion, extension, rotation and sidebending of her lumbar spine and decreased range of motion of 5 to 10 degrees due to pain.  According to the questionnaire, plaintiff had a MRI which showed a lateral disc protrusion with encroachment upon nerve roots and mild facet arthropathy.  They remarked that plaintiff showed symptoms of severe achy, stabbing pain in the lumbar region radiating to the right thigh and back of the right leg. The pain was rated a "10" on a 10-point scale.  This pain was constant, according to the questionnaire, and "everything" precipitated the pain.  It was assessed that plaintiff could sit, stand or walk only 3 hours in an 8-hour day and that plaintiff could sit only for 15 minutes at a time.  They indicated that plaintiff could lift 10 pounds occasionally and carry 5 pounds occasionally.  They concluded that plaintiff had significant limitations doing repetitive reaching, handling, fingering and lifting.  They also noted that plaintiff suffered from chronic anxiety and depression which may exacerbate her perceived symptoms.  They mentioned that plaintiff takes pain medication and that she has tried chiropractic treatments,

physical therapy and epidural injections without relief. Dr. Evans repeated some of these observations in a letter dated July 11, 2012. (Tr. 658-59).

The ALJ gave the questionnaire responses and the July 11, 2012 letter from Dr. Evans "no weight" because, according to the ALJ, they were: inconsistent with objective testing that showed only moderate degeneration in the spine; inconsistent with results of examinations contained in the treatment notes; inconsistent with plaintiff's activities of daily living; and inconsistent with plaintiff's level of treatment. (Tr. 23). In addition, the ALJ noted that plaintiff did not give full effort during the May 2, 2012 physical therapy evaluation. Kim King noted in the summary of results from the evaluation that plaintiff "self limited on 10 out of 11 functional tests due to subjective complaint of low back and leg pain." (Tr. 648).

B. <u>Ilardi and Goering</u>

Dr. David Goering, an internal medicine physician, and Maria Ilardi, an APRN, signed a psychiatric/psychological impairment questionnaire in early February 2013. (Tr. 732-39). The form indicates a diagnosis of severe depression and post traumatic stress disorder, as well as chronic back pain.

The clinical findings in support of the mental health diagnosis were: poor memory; a 60-pound weight gain; mood disturbance; recurrent panic attacks; pervasive loss of

8

interests; psychomotor agitation or retardation; paranoia; feelings of guilt or worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; decreased energy; intrusive recollections of a traumatic experience; persistent irrational fears; and generalized persistent anxiety. Plaintiff was considered markedly limited in: her ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain attendance and be punctual; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or in proximity to others; the ability to complete a normal workweek without interruptions from psychologically-based symptoms; the ability to interact appropriately with the general public; the ability to travel to unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently.

According to the questionnaire, plaintiff was not limited in: her ability to understand or carry out one or two-step instructions; her ability to ask simple questions or request assistance; her ability to get along with co-workers or peers; or her ability to be aware of normal hazards. Plaintiff was

mildly or moderately limited in:   her ability to make simple work-related decisions; her ability to accept instructions and respond to criticism from supervisors; her ability to maintain socially appropriate behavior; and the ability to respond appropriately to changes in the work setting.

Ilardi and Goering commented that plaintiff was not functioning at a level high enough to leave home let alone work. They also mentioned that plaintiff had back pain and that pain often is worse when someone is depressed.   They listed plaintiff's GAF score at that time as 25 and her lowest score the past year as 20.

The ALJ gave these opinions no weight for the following reasons.   She observed that Ilardi and Goering had only seen plaintiff on a few occasions.   She said that the GAF scores were inconsistent with the fact that plaintiff had never received inpatient psychiatric treatment.   Finally, she noted that their opinions were inconsistent with plaintiff's "fairly normal activities of daily living" and "minimal treatment for her impairments." (Tr. 24).

C. Standards for considering a treating doctor's opinion

A treating doctor's opinion about the nature and severity of impairments deserves controlling weight if it is well-supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the

record.   Alfrey v. Astrue, 904 F.Supp.2d 1165, 1169 (D.Kan. 2012).   A treating doctor's opinion must be weighed using all of the following factors:   1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.   Id., citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).   These are factors provided in 20 C.F.R. §§ 404.1527 and 416.927.   Watkins, supra.   If a treating physician's opinion is rejected completely, then the ALJ must give "specific, legitimate reasons for doing so." Alfrey, 904 F.Supp.2d at 1169.

    D. Arguments relating to Dr. Evans

    Plaintiff argues that the ALJ improperly imposed her own lay interpretation of the medical test findings when dismissing Dr. Evans' opinions.   Plaintiff appears to be referring to the ALJ's comment that Dr. Evans' opinions are inconsistent with the objective testing which shows that plaintiff has only moderate degeneration in her spine.   An MRI report written on November

16, 2011 by Dr. James Mandigo states: "1. Small left paracentral to lateral disc protrusion at L5/S1 with some encroachment upon the left L5 and S1 nerve roots. Significance is uncertain, as this, by history, is contralateral to patient's right radiculopathy complaint. 2. Mild hypertrophic facet osteoarthropathy from L3/4 through L5/S1. 3. No significant spinal stenosis." (Tr. 522). On September 17, 2011, Dr. Peter Winston referred to "minor disc space narrowing at L5-S1" after reviewing x-rays of plaintiff's spine.[1] (Tr. 499). The court finds that the ALJ's reference to objective findings in the record is not a matter of interposing a lay interpretation at odds with Dr. Evans' opinion. Instead, it is an effort to weigh Dr. Evans' opinion in light of its consistency with relevant evidence and the record as a whole. See Grace v. Colvin, 2013 WL 5913768 *3 (D.Kan. 11/1/2013)(finding no error in discounting doctor's opinion on basis of "mild" MRI results).

Plaintiff alleges that the ALJ failed to identify substantial evidence contradicting Dr. Evans' opinions. Plaintiff acknowledges, however, that the ALJ referred to Dr. Evans' own treatment notes. Dr. Evans recorded that during a November 9, 2011 visit, plaintiff showed normal strength, normal motor function and no acute distress. (Tr. 568, 621). On December 7, 2011, Dr. Evans observed no acute distress, easy

---

[1] This is part of exhibit 5F which is referred to by the ALJ at Tr. 21.

movement in the room, and no pain. (Tr. 563).  Again, on January 4, 2012, plaintiff was in no acute distress.   (Tr. 612). Plaintiff was in moderate distress on January 18, 2012.   (Tr. 607).   This was reduced to mild distress on February 1, 2012. (Tr. 604).   There was no acute distress observed on February 10, 2012.   (Tr. 599).   This is inconsistent with the severe pain described in Dr. Evans' questionnaire responses.

The ALJ also noted that Dr. Evans' treatment records did not note any functional limitations.   Plaintiff criticizes this comment on the grounds that doctors normally do not monitor functional limitations in their medical charts.   This criticism has some force.   But, as defendant states, Dr. Evans' records do refer to normal motor function and levels of distress and (once – Tr. 563) to ease of movement.   Therefore, the ALJ's comment has some pertinence.   On the other hand, the physical therapy records indicate that plaintiff had a limited range of motion in her trunk area. (Tr. 672-73).  They also described plaintiff as moving guardedly or slowly and having difficulty putting on her shoes and socks.   (Tr. 672, 678).   Also, Dr. James Dray, a chiropractor, stated on August 29, 2011, that plaintiff displayed signs of pain and distress with stiff and guarded movements and a limping gait. (Tr. 492).

Plaintiff further argues that the ALJ mischaracterized plaintiff's activities of daily living and, therefore,

13

improperly viewed them as inconsistent with Dr. Evans' opinion. The ALJ said:

> The claimant testified that she engages in several activities of daily living. She testified that she can go shopping. She reported that she does her own dishes and laundry, prepare her own meals and watches television daily. Overall, the claimant's descriptions of her daily activities are essentially normal. Her activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation that preclude her from work activities. Although claimant may not be able to engage in all of the activities that she did in the past and it may take her longer to perform the tasks, she is more active than would be expected if all of her allegations were credible.

(Tr. 22). One may dispute whether these daily activities are "essentially normal." The full nature and extent of these activities and the time and help required to perform them is not clear. But, it is reasonable to conclude that these activities are inconsistent with Dr. Evans' report that plaintiff suffers pain constantly which is 10 on a 10-point scale. Plaintiff notes that the Tenth Circuit has repeatedly held that limited daily activities do not establish an ability to work. But, the argument here is not that ALJ was improperly relying upon plaintiff's activities of daily living to establish her ability to work. Nor is plaintiff arguing that the ALJ relied upon plaintiff's activities of daily living to claim that plaintiff does not have a pain-producing impairment. Instead, the argument is that the ALJ improperly referred to the daily

14

activities (and other parts of the record) when weighing the opinion of Dr. Evans.  The court disagrees.  Activities of daily living is one factor which the ALJ properly considered as the ALJ reviewed whether Dr. Evans' opinion was consistent with the record as a whole.

Next, plaintiff argues that the ALJ improperly relied upon the opinion of a single non-examining consultant over the opinion of Dr. Evans.  Plaintiff is referring to the consulting opinion of Dr. Kyle Timmerman dated January 10, 2012.  The ALJ said she gave "great weight" to the opinions of Dr. Timmerman because:

> They are consistent with the evidence that shows [plaintiff] has required only a moderate level of treatment for her physical impairments, which indicates she is not significantly limited by her impairments.  They are consistent with the MRI of her lumbar spine that showed she had only a moderate level of degeneration.  Furthermore, they are consistent with the physical examinations contained within the record as they do not indicate she had any significant deficits in her physical functioning.  Additionally, they are consistent with the fact that she is able to engage in relatively normal daily activities, which indicates she is capable of engaging in physical activity.

(Tr. 23).   Dr. Jay Hughey conducted one of the physical examinations reviewed by Dr. Timmerman and mentioned by the ALJ in her opinion.  In his report, dated September 17, 2011, Dr. Hughey recorded that plaintiff exhibited normal ranges of motion in her dorsolumbar spine.  (Tr. 497).  Straight leg raising was

15

80 degrees on the right and 90 degrees on the left.   Id.
Plaintiff's motor function was normal.   Id.   She had no
difficulty getting on and off the examining table, mild
difficulty with heel and toe walking, moderate difficulty
squatting and arising from the sitting position and severe
difficulty hopping.   Id.   Dr. Hughey, however, also observed
difficulty with orthopedic maneuvers.   (Tr. 498).

As already stated, plaintiff criticizes the ALJ for relying
upon Dr. Timmerman, a non-examining consulting physician, over
Dr. Evans, a treating physician.   Generally, an ALJ should give
more weight to treating source opinions over non-treating source
opinions.   20 C.F.R. §§ 404.1527(c), 416.927(c).   The Tenth
Circuit has stated that "an agency physician who has never seen
the claimant is entitled to the least weight of all."   Robinson
v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).   But, under
appropriate circumstances, the opinions of state agency
consultants may be entitled to greater weight than the opinions
of treating physicians.   Hayes v. Colvin, 2014 WL 6609380 *5
(D.Kan. 11/20/2014).   One such situation is when the
consultant's opinion "'is based on a review of a complete case
record that includes a medical report from a specialist in the
individual's particular impairment which provides more detailed
and comprehensive information than what was available to the
individual's treating source.'"   Larkins ex rel. M.D. v. Colvin,

568 Fed.Appx. 646, 649 (10th Cir. 6/26/2014)(quoting SSR 96-6P, 1996 WL 374180 at *3)(emphasis added).   In Daniell v. Astrue, 384 Fed.Appx. 798, 803 (10th Cir. 2010), the Tenth Circuit was concerned when a consultant's opinion was not based upon review of a complete case record.   There, the court ordered a remand in part because the ALJ relied upon a medical consultant's opinion which did not include a review of a treating physician's medical records and assessments.   Here, Dr. Timmerman did not review and discuss the reports of Dr. Evans and others who treated plaintiff after November 2011.

The court, of course, is not declaring that a treating or examining source must in every case be preferred over a non-examining consulting physician or that an ALJ may not consider the opinion of non-examining consulting physician unless that physician has reviewed the entire case record.   We recognize, that, for instance, in Jameson v. Colvin, 2014 WL 4071694 *4 (D.Kan. 8/18/2014), the court sustained assigning greater weight to a consulting source over an examining source.   But, in that case the consulting source opinion "was largely consistent with other evidence in the record in terms of plaintiff's positive response to treatment and medication, her relatively normal daily living activities and her continued part-time employment."   Here, it is easily argued that plaintiff has not had a positive response to treatment and medication, it is clear that she has

17

not had any type of employment, and it is reasonably disputed whether her daily living activities are relatively normal.

Dr. Timmerman did not appear to consider the failed attempts at treatment and the treatment records of Evans, King, Ilardi and Goering. The ALJ made her own evaluation of these matters. But, contrary to 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3), when giving Dr. Timmerman's opinion great weight, the ALJ did not evaluate the degree to which Dr. Timmerman's opinion considered all of the pertinent evidence, including the opinions of treating and other examining sources.

The court realizes that an ALJ is not required to discuss every factor relevant to weighing a doctor's opinion. See Fulton v. Colvin, 2015 WL 6847808 *4 (10th Cir. 11/9/2015); Anderson v. Colvin, 514 Fed.Appx. 756, 761-62 (10th Cir. 2013). But, the record should reflect that the ALJ considered every factor in the weight calculation. Andersen v. Astrue, 319 Fed.Appx. 712, 718-19 (10th Cir. 2009). Examining the entire record, the court is convinced that the ALJ did not properly consider the failure of the consulting physicians to evaluate the complete record in this case.

E. Arguments relating to Ilardi and Goering

Plaintiff argues that the ALJ did not properly consider the opinions of Ilardi and Goering. Plaintiff does not dispute that Ilardi and Goering only saw plaintiff on a few occasions and

that this is a relevant consideration in weighing their opinions. But, in opposition to the ALJ, plaintiff contends that their opinions are not contradicted by plaintiff's activities of daily living or absence of inpatient psychiatric treatment. While plaintiff's description of her daily activities is not strong evidence supporting the ALJ's rejection of Ilardi and Goering's opinions, it provides at least a modicum of relevant evidence and the ALJ is entitled to consider it. See Knight v. Colvin, 2015 WL 3407302 *7 (D.Colo. 5/26/2015)(ALJ may rely upon activities of daily living to assess credibility of a medical opinion in conjunction with other evidence in the record); Garrison v. Colvin, 2013 WL 1411774 *9 (D.Kan. 4/8/2013)(daily activities may be considered along with other evidence in determining whether a person is entitled to disability benefits). Similarly, the court believes the absence of inpatient treatment has a modicum of relevance to an evaluation of Ilardi and Goering's opinions. It is part of the "treatment relationship" and the "record as a whole" which an ALJ must consider according to the standards set forth in the regulations and Tenth Circuit cases. But, as plaintiff points out with citation to Voigt v. Colvin, 781 F.3d 871, 876 (7th Cir. 2015), the ALJ risks unacceptable conjecture by stating that a certain GAF score "seems" to indicate plaintiff would need inpatient treatment.

Plaintiff also criticizes the ALJ for granting great weight to a non-examining psychologist. This returns the court to the issue of medical opinions which are issued without the benefit of reviewing the complete record. The ALJ gave great weight to the opinion of a non-examining psychologist (Dr. Robert McRoberts) who issued his opinion on January 9, 2012 and to the opinion of an examining psychologist (Dr. George Hough) who evaluated plaintiff on September 26, 2011. Neither source considered the later records in this case. The ALJ stated that these sources' conclusions were consistent "with the fact that none of [plaintiff's] treatment providers have indicated she had any significant deficits imposed by her mental health functioning." (Tr. 23). Dr. Evans, however, stated in May 2012 that plaintiff had depression that likely worsened her physical symptoms and that plaintiff had psychological limitations which would affect her ability to work. (Tr. 655-56). Ilardi and Goering reached the same conclusions in their February 2013 report which listed numerous limitations in her mental health functioning. (Tr. 733 and 737-38).

As with the ALJ's analysis of Dr. Timmerman's opinion, the court believes the ALJ failed to follow the regulations (20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3)) requiring that she consider the degree to which Dr. McRoberts and Dr. Hough

evaluated all of the pertinent evidence including the opinions of treating and other examining sources.

IV. CONCLUSION

The court concludes that the ALJ did not follow the regulations in considering the opinions of consulting physicians and that the decision denying benefits should be reversed and remanded for further proceedings consistent with this memorandum and order. In rendering this decision, the court does not intend to imply that on remand the Commissioner must find plaintiff disabled. The court will not reach the remaining issue involving the ALJ's credibility analysis because that issue may be affected by the ALJ's resolution of this case on remand. See Field v. Astrue, 2009 WL 1212044 *14 (D.Kan. 5/5/2009). Judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 19th day of November, 2015, at Topeka, Kansas.


s/Sam A. Crow
_____
Sam A. Crow, U.S. District Senior Judge